# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| MICHELLE SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION CASE NUMBER: |
| v. ) | |
| ) | 2:25-cv-24 |
| INTUITIVE SURGICAL, INC., ) | |
| ) | |
| Defendant. ) | PLAINTIFF DEMANDS A TRIAL |
| ) | BY STRUCK JURY |

## COMPLAINT

## JURISDICTION AND VENUE

1. This is an employment discrimination action in which the Plaintiff, Michelle Smith, alleges that the Defendant, Intuitive Surgical, Inc., violated Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and the Americans with Disabilities Act, as amended ("ADA").

2. The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, 28 U.S.C. §§ 2201 and 2202.

3. Venue is proper because the Defendant employed the Plaintiff in Houston County, Alabama which is part of the Southern Division of the Middle

1

District of Alabama.

## PARTIES

4. The Plaintiff, Michelle Smith, is an adult resident of the State of Alabama.

5. The Defendant, Intuitive Surgical, Inc. ("Intuitive"), is foreign corporation formed in Delaware with its headquarters in Sunnyvale, California.

6. Intuitive is a publicly traded company (Nasdaq: ISRG).

7. Intuitive develops, manufactures, and markets robotic-assisted surgical systems.

8. Intuitive employes over 13,600 employees globally.

## ADMINISTRATIVE REMEDIES

9. On October 23, 2023, Smith filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). (Exhibit 1).

10. On October 9, 2024, the EEOC issued Ms. Smith a Dismissal and Notice of Rights. (Exhibit 2).

11. Ms. Smith filed this action within 90 days October 9, 2024.

## FACTUAL BACKGROUND

12. Ms. Smith worked for Intuitive in the position of Senior Market Manager, US Hospital Market.

13. Ms. Smith worked as part of a team on a national level for Intuitive.

2

14. Defendant paid Ms. Smith a base salary of $185,000.

15. Ms. Smith had employee benefits which included financial incentives in addition to her base salary.

16. Matthew "Matt" Carroll, was Intuitive's Senior Director, Market Access & Custom Analytics in 2021.

17. Ms. Smith had worked for Intuitive on a prior occasion, and due to her experience and professional reputation, Ms. Carroll recruited her to return to Intuitive in 2021.

18. Ms. Smith initially worked under Mr. Carroll.

19. In 2022, Intuitive promoted Donald Brandt from Senior Group Manager, Hospital Marketing to Director, Hospital Marketing.

20. In 2022, Intuitive moved Ms. Smith under Donald Brandt.

21. In 2022, Intuitive moved Ms. Smith from the Market Access & Custom Analytics ("MACA") Team to the Commercial Marketing Team.

22. As part of Ms. Smith's job, she had to travel the country.

23. Ms. Smith frequently travelled with Mr. Brandt.

24. Mr. Brandt regularly invited Ms. Smith to have a drink with him in his hotel room.

25. Ms. Smith viewed Mr. Brandt's invitations as inappropriate.

26. Mr. Brandt's invitations made Ms. Smith uncomfortable.

27. If Ms. Smith refused Mr. Brandt's invitations, he distanced himself from her during business communications.

28. If Ms. Smith refused Mr. Brandt's invitations to have drinks in his room, Mr. Brandt acted in a way which limited or negatively affected Ms. Smith's ability to do her job.

29. At a meeting in September 2022, a hospital executive commented about his penis and how he has lots of "little boat slips" to put it in.

30. The executive's comments offended Ms. Smith and others.

31. Ms. Smith complained to Mr. Brandt that while she recognized Intuitive cannot control what a hospital executive says, Intuitive could control whether to put that executive in front of Intuitive employees again.

32. Shortly thereafter, Intuitive held a "Recap 360" call during which it held out the hospital executive as a hero at the earlier meeting where he had made the vulgar remarks.

33. Ms. Smith observed sexual vulgarities were commonly used by her coworkers during work-related communications.

34. Prior to March 2023, Intuitive had not expressed to Ms. Smith that her performance and/or behavior was putting her employment status in jeopardy.

35. Prior to March 2023, Ms. Smith's performance reviews reflected that her performance and behavior were acceptable to Intuitive.

36. Prior to March 2023, Intuitive had not disciplined Ms. Smith.

37. In March 2023, Ms. Smith attended a business trip in the California wine country.

38. During the business trip, Ms. Smith heard her coworkers discussing masturbation on the plane, during Uber rides, and while at a business gathering at a vineyard.

39. Ms. Smith found her coworkers' comments demeaning to her and all women.

40. The sexual content and context of the coworkers' comments offended and upset Ms. Smith.

41. The sexual content and context of the coworkers' comments made Ms. Smith uncomfortable.

42. Because of the nature of her job, Ms. Smith was not free to avoid or remove herself from conversations with her coworkers.

43. Based on the training she received from Intuitive on sexual harassment and gender discrimination, Ms. Smith believed in that her coworkers' comments created a sexually hostile work environment and constituted unlawful sexual harassment and discrimination.

44. During Ms. Smith's employment, she observed a pattern and practice of Intuitive subjecting women, like her, to disparate treatment as well as hostile

and abusive behavior.

45. Ms. Smith experienced a culture of fear that chilled many women from complaining of gender discrimination because of the looming threat of retaliation.

46. When Ms. Smith returned from the business trip, she complained to Mr. Brandt about what she believed in good faith to be a sexually discriminatory and harassing work culture.

47. She reminded Mr. Brandt of the earlier incident where Intuitive praised the hospital executive following a meeting where he made crude remarks about his penis and sex, offending her and others.

48. Ms. Smith expressed to Mr. Brandt that anytime someone starts having vulgar sexual conversations, it needs to be shut down.

49. Ms. Smith complained she did not want to be made to feel she was not a good team player because she did not want to go out drinking.

50. Following Ms. Smith's complaint, she experienced heightened scrutiny from Intuitive with respect to her behavior and performance.

51. Following Ms. Smith's complaint, Intuitive moved Ms. Smith under Samantha Martin's supervision.

52. At the time, Ms. Martin was Intuitive's Senior Hospital Marketing Manager.

53. Ms. Martin worked under Donald Brandt.

54. Ms. Martin, on an organizational level, was Ms. Smith's peer, not her superior.

55. The optics of having Ms. Smith report to someone who was organizationally at her same level was humiliating and insulting to Ms. Smith.

56. The optics of Intuitive moving Ms. Smith to reporting to Ms. Maritn implied that Intuitive had demoted Ms. Smith.

57. Further, Ms. Smith had complained to Mr. Brandt about conduct by Ms. Martin which Ms. Smith found to be vulgar and offensive.

58. Ms. Smith viewed Intuitive' s decision to put her under Ms. Martin's supervision as punishment for her complaints and an effort to deter her from complaining further.

59. Following Ms. Smith's complaint, Intuitive passed over Ms. Smith for pay and promotional opportunities.

60. Following her complaint, Intuitive ignored or froze out Ms. Smith as it related to career opportunities.

61. For example, Intuitive has a leadership development program that was part of Ms. Smith's talent pathway.

62. Intuitive passed on including Ms. Smith in the management development program with notice.

63. When Ms. Smith questioned Mr. Brandt why she was being placed under Ms. Martin and why Intuitive was offering opportunities to Ms. Martin that were not being offered to Ms. Smith, Mr. Brandt responded that "Sam is a yes girl."

64. Following her complaint to Mr. Brandt, Ms. Smith received a performance evaluation from Intuitive that was negative and adversely affected her incentives.

65. Following Ms. Smith's complaint, Intuitive cut Ms. Smith's incentives by half or more without explanation.

66. Following Ms. Smith's complaint, Intuitive kept key information concerning the actions of her team from her, limiting her ability to have necessary information to do her job and isolating her from her team.

67. An example includes not sharing notes with Ms. Smith of meetings with a surgeon advisory board.

68. Following Ms. Smith's complaint, Intuitive did not invite Ms. Smith to all necessary meetings for her team.

69. Ms. Smith complained to Mr. Brandt of retaliation and specifically complained about the reduction of her incentives.

70. Ms. Smith rebutted the allegations in the performance review.

71. Intuitive's Human Resource Department investigated after Ms. Smith's

complaint, but did not communicate to Ms. Smith the specific scope or subject matter of the investigation.

72. Following Human Resources' investigation, Intuitive told Ms. Smith that the behavior about which she had complained was unprofessional, but her negative performance review and loss of incentives would stand.

73. It appeared to Ms. Smith that Intuitive was manufacturing a paper trail to terminate her or force her into looking for a job outside the company.

74. On or about May 1, 2023, Intuitive put Ms. Smith on a performance improvement plan ("PIP").

75. Based on Ms. Smith's experience, Intuitive used PIPs to manage employees out of their employment with Intuitive.

76. The PIP was a tool to create a paper trail to terminate an employee.

77. The constant scrutiny and negative treatment created a retaliatory hostile work environment for Ms. Smith.

78. The constant scrutiny, negative treatment, and retaliatory hostile work environment caused Ms. Smith physical and mental stress requiring medical treatment.

79. In late May/early June 2023, Ms. Smith's doctor made a written request for Ms. Smith to receive medical leave due to her working conditions catalyzing anxiety and panic attacks as well as causing her blood pressure to be high.

80. Intuitive used a third party, Sedgewick, to administer Ms. Smith's leave.

81. Intuitive took steps to interfere with Ms. Smith's leave by not providing necessary and/or timely information to Sedgewick and/or her.

82. Intuitive's actions exacerbated Ms. Smith's physical and emotional problems.

83. Ms. Smith requested accommodation: returning to work under different supervision.

84. Ms. Smith provided Intuitive with documentation from her doctor that she could not return to work under her current supervision because of the effects of their hostility on her health.

85. Intuitive did not change Ms. Smith's supervision.

86. Intuitive did not engage in an interactive dialogue with Ms. Smith about her request for accommodation.

87. Intuitive interfered with Ms. Smith's receipt of short-term disability benefits.

88. On August 22, 2023, Ms. Smith submitted a letter of resignation to Intuitive.

89. Ms. Smith communicated she was resigning, writing:

> This letter is to inform you that I am resigning from my position, effective two weeks from today, with my last day of employment being September 5, 2023. My departure is due to the ongoing hostility toward women, retaliatory hostile work environment, interference with my medical leave, and discrimination/retaliation I've experienced. My doctor has communicated to Intuitive Surgical that I am unable to return to work under my current supervision due to the effects their hostility has on my health. Intuitive Surgical has not offered me another alternative, so I've had no choice other than to find new employment.

## COUNT I
## GENDER DISCRIMINATION (HARASSMENT)
## TITLE VII

90. For purposes of context, Smith adopts and incorporates the facts set forth above.

91. Throughout her employment, Ms. Smith worked in an environment that was demeaning and insulting to women.

92. Ms. Smith's witnessed numerous unwanted vulgar comments of a sexual nature which offended and embarrassed her, made her feel that Intuitive did not value or respect women as much as men, and made her uncomfortable interacting with her coworkers.

93. The vulgar sexual comments happened in situations which Ms. Smith was not free to leave.

94. The vulgar sexual comments happened at almost every in-person interaction Ms. Smith had with her coworkers.

95. Ms. Smith knew Intuitive subjected other women to a work environment hostile to women.

96. Despite two women (Jennifer Lehmann and Gina Steinhoff) complaining that Victor Ebong was physically intimidating, aggressive, belittling, and demeaning to them, Intuitive promoted Mr. Ebong to Area Sales Director.

97. After Intuitive promoted Mr. Ebong, Merrille Dirickson, an Area Sales

Manager, complained to Intuitive that Mr. Ebong was being aggressive, belittling, and demeaning to her.

98. After Ms. Dirickson complained, Intuitive scrutinized her performance, subjected her to a sham PIP, and threatened her with termination.

99. Intuitive's Human Resources Department, led by Henry Pastor, conducted a flawed investigation into Ms. Dirickson's complaint.

100. Ms. Smith learned of what happened with Mr. Ebong and Ms. Dirickson after Ms. Smith was moved under Mr. Brandt.

101. Ms. Smith's knowledge of what happened with Ms. Dirickson influenced and affected how Ms. Smith viewed Intuitive's treatment of her and her work environment.

102. Ms. Smith learned that another female employee, Amanda Coen, resigned from Intuitive due to her mistreatment and the work environment being abusive to women.

103. Ms. Smith learned that Ms. Coen submitted a resignation letter to Intuitive identifying numerous incidents evidencing a work culture at Intuitive hostile to women.

104. Ms. Smith heard other women had problems with their work environment being humiliating, and Intuitive not taking corrective action.

105. Ms. Smith's knowledge of other women working for Intuitive under

conditions which were abusive and demeaning to them as women affected how she viewed her own work environment.

106. Ms. Smith complained to her supervisor about what she believed to be sexual harassment, but the conduct continued.

107. Intuitive subjected Ms. Smith to unlawful sexual harassment.

108. Intuitive's conduct injured Smith.

WHEREFORE, PREMISES CONSIDERED, Smith requests this Court enter a judgment against Intuitive Surgical, Inc. under Title VII of the Civil Rights Act of 1964, as amended, pursuant to an Order by which this Court:

a. Awards compensatory damages to be determined by the trier of fact;

b. Awards punitive damages to be determined by the trier of fact;

c. Awards nominal damages to be determined by the trier of fact;

d. Awards injunctive and equitable relief including, but not limited to, training, backpay, reinstatement and/or reasonable front pay, and modification of Smith's personnel file(s);

e. Awards that relief which is fair, reasonable, and just;

f. Awards costs against Intuitive Surgical, Inc. including a reasonable attorney's fee.

## COUNT II
## RETALIATION
## TITLE VII

109. For purposes of context, Smith adopts and incorporates the facts set forth above.

110. Section 704(a) of Title VII of the Civil Rights Act prevents retaliation by employers. The relevant statutory language reads:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

111. Smith engaged in activity protected by Title VII when she complained to Mr. Brandt and human resources about conduct she believed in good faith to be sexual harassment.

112. Intuitive retaliated against Smith when it subjected her to heighted scrutiny, gave her a negative evaluation, placed her on a PIP, cut her incentives, moved her under Ms. Martin's supervision, denied her professional opportunities, interfered with and/or frustrated her ability to take medical leave, would not move her from the supervision of her Ms. Martin and Mr. Brandt, and constructively discharged her.

113. Intuitive's actions were intended to punish Smith for engaging in protected activity as well as to discourage and dissuade further protected activity.

114. Intuitive's actions injured Smith.

WHEREFORE, PREMISES CONSIDERED, Smith requests this Court enter a judgment against Intuitive Surgical, Inc. under Title VII of the Civil Rights Act of 1964, as amended, pursuant to an Order by which this Court:

a. Awards backpay calculated on a quarterly basis inclusive of interest;

b. Awards compensatory damages to be determined by the trier of fact;

c. Awards punitive damages to be determined by the trier of fact;

d. Awards nominal damages to be determined by the trier of fact;

e. Awards injunctive and equitable relief including, but not limited to, training, backpay, reinstatement and/or reasonable front pay, and modification of Smith's personnel file(s);

f. Awards that relief which is fair, reasonable, and just;

g. Awards costs against Intuitive Surgical, Inc. including a reasonable attorney's fee.

## COUNT III
## RETALIATORY HOSTILE WORK ENVIRONMENT
## TITLE VII

115. For purposes of context, Smith adopts and incorporates the facts set forth above.

116. Smith engaged in activity protected by Title VII when she complained to Mr. Brandt and human resources about conduct she believed in good faith to be sexual harassment.

117. Intuitive retaliated against Smith when it subjected her to heighted scrutiny, gave her a negative evaluation, placed her on a PIP, cut her incentives, moved her under Ms. Martin's supervision, denied her professional opportunities, interfered with and/or frustrated her ability to take medical leave, and would not move her from the supervision of her Ms. Martin and Mr. Brandt effectively ending her employment.

118. Intuitive's actions were intended to punish Smith for engaging in protected activity as well as to discourage and dissuade further protected activity.

119. Ms. Smith knew of others, including

120. Intuitive's actions injured Smith.

WHEREFORE, PREMISES CONSIDERED, Smith requests this Court enter a judgment against Intuitive Surgical, Inc. under Title VII of the Civil Rights Act of 1964, as amended, pursuant to an Order by which this Court:

    a. Awards backpay calculated on a quarterly basis inclusive of interest;

    b. Awards compensatory damages to be determined by the trier of fact;

    c. Awards punitive damages to be determined by the trier of fact;

    d. Awards nominal damages to be determined by the trier of fact;

    e. Awards injunctive and equitable relief including, but not limited to, training, backpay, reinstatement and/or reasonable front pay, and modification of Smith's personnel file(s);

f. Awards that relief which is fair, reasonable, and just;

g. Awards costs against Intuitive Surgical, Inc. including a reasonable attorney's fee.

## COUNT IV
## AMERICANS WITH DISABILITIES ACT
## FAILURE TO ACCOMMODATE

121. For purposes of context, Smith adopts and incorporates the facts set forth above.

122. Ms. Smith suffers from one or more impairments that affect her emotionally causing her anxiety and stress.

123. Ms. Smith's anxiety and stress, in their unaccommodated state, affected her in the major life activity of working.

124. Ms. Smith requested the reasonable accommodation of not having to work under the supervision of Mr. Brandt and/or Ms. Martin of the effects of their behavior on her anxiety and stress.

125. Intuitive denied Ms. Smith's request for accommodation.

126. Intuitive did not engage in an interactive dialogue with Ms. Smith concerning her need for accommodation.

127. As a result of Intuitive not accommodating Ms. Smith, her employment with Intuitive ended, causing her injury.

WHEREFORE, PREMISES CONSIDERED, Smith requests this Court

enter a judgment against Intuitive Surgical, Inc. under the Americans with Disabilities Act, as amended, pursuant to an Order by which this Court:

a. Awards backpay;

b. Awards compensatory damages to be determined by the trier of fact;

c. Awards punitive damages to be determined by the trier of fact;

d. Awards nominal damages to be determined by the trier of fact;

e. Awards injunctive and equitable relief including, but not limited to, training, backpay, reinstatement and/or reasonable front pay, and modification of Smith's personnel file(s);

f. Awards that relief which is fair, reasonable, and just;

g. Awards costs against Intuitive Surgical, Inc. including a reasonable attorney's fee.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

Respectfully submitted,

/s/ Heather Newsom Leonard
Heather Newsom Leonard
ATTORNEY FOR PLAINTIFF

OF COUNSEL:

HEATHER LEONARD, PC
2105 Devereux Circle, Suite 111
Birmingham, AL 35243
(205) 977-5421
Heather@HeatherLeonardPC.com

**SERVE THE DEFENDANT VIA PROCESS SERVER:**

Intuitive Surgical, Inc.
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104